UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LINDA F. REYNOLDS,

                Plaintiff,

v.                                                           Case No. 5:08-cv-123-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability and disability insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions. (Docs. 18 & 19.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On January 16, 2004, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income, claiming a disability onset date of December 8, 2003. (R. 99-102, 442-45.) Plaintiff's applications were denied initially and upon reconsideration. (R. 45-50, 447-55.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 51.) ALJ James Ciaravino conducted Plaintiff's administrative hearing on July 12, 2006. (503-39.) ALJ Ciaravino

issued a decision unfavorable to Plaintiff on December 1, 2006. (R. 34-44.) Upon review, the Appeals Council vacated the decision and remanded the case for further proceedings. (R. 75-78.) Specifically, the Appeals Council directed the ALJ to reconsider Plaintiff's RFC with vocational testimony, consider whether Plaintiff engaged in substantial gainful employment after the alleged onset date and clarify Plaintiff's past relevant work. On November 2, 2007, ALJ Ciaravino conducted a supplemental hearing. (R. 456-502.) On November 15, 2007, ALJ Ciaravino issued another unfavorable decision. (R. 11-23.) Plaintiff timely filed a request for review with the Appeals Council (R. 10), which denied her request (R. 7-9.) On March 21, 2008, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

3

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was thirty-eight years old on the date of the ALJ's decision. (R. 19.) Plaintiff has an eleventh grade education. (R. 217.) She has worked as a cashier, assistant manager of a convenience store and certified nurse assistant. (R.134.)

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

Plaintiff contends that she has been unable to work since December 8, 2003 although Plaintiff later amended the onset date to August 11, 2005.

All of Plaintiff's impairments are the result of a December 8, 2003 automobile accident in which she was hit by a drunk driver. Plaintiff sustained a ruptured globe of the right eye, complex facial lacerations and severe fractures of the right arm. (R. 173-200.) Plaintiff was treated at Shands Hospital where she underwent surgery to repair her ruptured globe, amputate her right arm above the elbow, and irrigate and close the complex lacerations on her face. (R. 192-98.) Plaintiff was subsequently fitted with a body powered prosthetic arm and it was noted that the prosthetic would limit her ability to lift, carry, travel and handle objects. (R. 201.) Plaintiff underwent additional facial plastic surgery as well as surgical revisions of her amputation, cataract removal, and surgical removal of glass. (R. 222, 225-235).

As a result of the accident, Plaintiff has struggled with depression, anxiety, panic attacks and post traumatic stress syndrome. Plaintiff has not been treated by a psychiatrist or psychologist, nor has she been prescribed medication for her mental impairments. However, the state division of vocational rehabilitation referred Plaintiff to Mercy Oibo, a licensed mental health counselor. (R. 256-91, 321-423, 432-41.) From March 29, 2004 through February 14, 2007, Plaintiff attended at least 68 counseling sessions with Oibo. Plaintiff reported phantom pain, being depressed, sleep problems due to constant nightmares, panic, anxiety, phobia, and stress related to financial problems. Over the course of therapy, Oibo noted that Plaintiff had post-traumatic stress disorder, major depressed disorder, adjustment disorder with depressed mood,

6

adjustment disorder with anxiety, anxiety disorder, panic disorder with depressed mood, panic disorder with agoraphobia and pain due to the accident.

On November 22, 2005, Oibo completed a "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)". (R. 310-12.)  Oibo found *inter alia*, that Plaintiff had poor ability to maintain attention and concentration for extended periods, complete a normal workday or workweek, perform at a consistent pace, maintain socially appropriate behavior and travel in unfamiliar places or use public transportation was poor.

In the absence of any records from psychiatrists and psychologists, the Commissioner referred Plaintiff to Rodney A. Poetter, Ph.D. for a general clinical evaluation with mental status on June 18, 2004. (R. 217-19.)  Dr. Poetter opined that Plaintiff's mental status examination was inconsistent with a major affective or thought disturbance and he found no indications of severe deficits in memory or concentration. Dr. Poetter's diagnostic impression was post-traumatic stress disorder, chronic; nicotine dependence; and depressive disorder NOS.  Dr. Poetter noted that he was "surprised" that Plaintiff was not taking psychotropic medication for her symptoms of post-traumatic stress disorder.

On October 23, 2006, Plaintiff was also referred to Linda S. Bojarski, Psy.D. for general personality evaluation and memory testing. (R. 424-31.)  Plaintiff was reading at the 10th percentile for her peer group and her general memory scales were measured at the 32nd percentile.  Dr. Bojarski administered the MMPI-2 and noted that the validity scales suggest "exaggeration of existing problems as a cry for help, or presence of severe psychopathology."  Dr. Bojarski's impression was 309.81 Post Traumatic Stress

7

Disorder; 307.89 Pain Disorder Associated with Both Psychological Factors and a General Medical Condition; 296.22 Major Depressive Disorder, Single Episode. Dr. Bojarski completed a "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)." Dr. Bojarski found that Plaintiff's ability to understand, remember and carry out instructions was not affected by her impairments but that she had slight limitations in her ability to interact appropriately with the public and respond appropriately to changes in a routine work setting and moderate limitations in her ability to interact appropriately with supervisors and co-workers and respond appropriately to work pressures in a usual work setting.

There are two physical residual function capacity ("RFC") assessments of record which were performed by non-examining state agency physicians. Nicholas H. Bancks, M.D. performed an assessment on July 19, 2004 (R. 240-47) and Terry T. Rees, M.D. performed a second assessment on October 6, 2004. (R. 248-55.) Based on their review of the medical records, Bancks and Rees concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without limitation in the lower extremities but with limitation in the upper extremities. Bancks and Rees found that Plaintiff's handling, fingering, and feeling were limited and that she could only crawl occasionally. Bancks further found that Plaintiff could never climb ladder/rope/scaffolds, could only occasionally balance and should avoid concentrated exposure to hazards. Rees found that Plaintiff was limited in her ability to reach in all directions.

There are two psychiatric review technique forms which were completed by non-examining state agency physicians. Michael H. Zelenka, Ph.D performed his review on June 30, 2004 (R. 202-16) and Mark A. Williams, Ph.D. performed his review on October 19, 2004. (R. 292-309.) Zelenka found that Plaintiff's affective and anxiety-related disorders were not severe and resulted in only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Williams found that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace and one or two episodes of decompensation, each of extended duration. Williams also completed a Mental Residual Functional Capacity Assessment in which he found that Plaintiff had insignificant limitations in her ability to understand and remember, and insignificant to moderate limitations in her ability to concentrate, interact socially and adapt to various situations.

At the supplemental hearing, Plaintiff testified that she returned to her prior work as a cashier at the Circle K in December 2004 but that she only worked there until August 2005 because it was too physically demanding on her left arm, and that she was missing two or three days per month due to panic attacks, nightmares and because she could not get of bed in the morning. (R. 464-65.) Based on this work, Plaintiff voluntarily amended her onset date to August 11, 2005. (R. 468-69.)

Plaintiff testified that she was still having phantom pains. (R. 470.) Plaintiff also testified that she is still having depression, panic attacks and problems with anxiety but that she did not have the resources to go to a psychiatrist or psychologist to get

9

medication. (R. 471, 477.) Plaintiff testified that she had not been treated by a psychiatrist or psychologist. The Department of Vocational Rehabilitation paid for counseling with Obio, a mental health counselor. (R. 472.) Plaintiff testified that the counseling had decreased her anxiety. (R. 474.) She testified that she takes tylenol for cramping and aching in her left arm but she does not take anything for the phantom pain. Plaintiff testified that she can load the dishwasher, vacuum for ten minutes, and handle most things for her personal care, other than tying her shoes or hooking her bra. (R. 476-77.) Plaintiff testified that she has had problems with concentration and memory since the accident. (R. 478.) A vocational expert, David Pigue testified at the hearing.

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had right arm amputation, formerly the dominant extremity; post-traumatic stress disorder; and an adjustment disorder. (R. 16.)[22] However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 17.)

Then the ALJ found that Plaintiff had the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently with the left arm; to stand/walk for at least 2 hours in an 8-hour workday; to sit for at least 6 hours in an 8-hour workday; limited pushing/pulling with the upper left extremity due to easy fatigability and right arm amputation; antalgic

---

[22] The ALJ expressly incorporated by reference the discussion of the medical history in the Plaintiff's prior decision. (R. 19.)

gait, and positive Rhomberg; to occasionally balance, kneel, crouch, crawl, and stoop; must avoid climbing; and limited vision. He additionally found a slight restriction in interacting appropriately with the public; moderate restriction in interacting appropriately with the public; moderate restriction in interacting with supervisors and coworkers; and slight restriction in responding appropriately to changes in a routine work setting. The ALJ found that Plaintiff was capable of performing her past relevant work as a cashier, and thus concluded that Plaintiff was not disabled.

## IV. DISCUSSION

### A. The ALJ properly weighed Plaintiff's alleged visual limitations

Plaintiff argues that the ALJ failed to weigh all of plaintiff's impairments in determining Plaintiff's RFC. As an initial matter, Plaintiff contends that the ALJ's step two analysis was not substantially complete because he failed to include visual blurriness as a severe impairment.

However, because the ALJ found three impairments to be severe – i.e., right arm amputation, formerly the dominant extremity; post-traumatic stress disorder; and an adjustment disorder – and proceeded to step three of the sequential analysis, the ALJ's analysis at step two does not constitute reversible error.[23]

Moreover, the ALJ properly considered Plaintiff's impairments in combination as required by Eleventh Circuit law. Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in

---

[23] Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

11

making the determination as to whether the claimant is disabled.[24] Here, the ALJ not only discussed Plaintiff's visual blurriness (R. 40-41)[25], but he also included a finding of "limited vision" in his RFC. (R. 18.) Moreover, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that medically meets or equals any of the impairments" listed in the regulations and noted that in making his RFC finding he "considered all symptoms." (R. 17-18.) These statements by the ALJ are more than sufficient to demonstrate that he properly considered Plaintiff's impairments in combination.[26]

Plaintiff also argues that the ALJ erred because he did not adequately account for Plaintiff's visual limitation in his hypothetical question to the VE. While the ALJ initially stated that Plaintiff had "no visual limitations" in his hypothetical, he immediately asked Plaintiff to describe her visual limitations. (R. 487.) Plaintiff stated that vision in her right eye was "real blurry" because her "globe was ruptured" and she "still [has] a hole in there." (R. 487-88.) Plaintiff argues that this clarification was insufficient because the ALJ cut off Plaintiff's attempt to describe her visual limitations. However, Plaintiff has not identified any record evidence suggesting additional visual limitations. Indeed, Dr. Demmi (the only doctor who examined Plaintiff's visual limitations) noted that Plaintiff had "right eye vision deficits" and an irregular right iris, but her visual acuity

---

[24] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985), *aff'd on other grounds*, Sullivan v. Hudson, 490 U.S. 877 (1989)).

[25] The ALJ's second decision explicitly incorporated by reference the medical evidence discussed in the first decision. (R. 19.)

[26] Id.; Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

with glasses was 20/40 in both the right and left eye and bilaterally and her pupils were equal and reactive to light. (R.314.)

Accordingly, the ALJ properly considered Plaintiff's visual limitations.

### B. The ALJ did not err by relying upon an incomplete quotation from Dr. Bojarski's consultative report

Plaintiff also argues that the ALJ improperly discounted the seriousness of Plaintiff's mental impairments based upon an incomplete quotation to Dr. Bojarski's consultative report. The ALJ noted that the record includes "evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." In reaching this conclusion, the ALJ explained that Dr. Bojarski reported that "examination of the MMP!-2 validity scales suggested exaggeration of existing problems as a cry for help." However, Dr. Bojarski's report actually stated – "Examination of the MMPI-2 validity scales suggests exaggeration of existing problems as a cry for help, **or presence of severe psychopathology**." (R. 427)(emphasis added.)

As an initial matter, while the ALJ only included a partial quote, the entire quote is still supportive of the ALJ's finding that the record includes "evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." Moreover, Dr. Bojarski's ultimate conclusions regarding Plaintiff's mental limitations (R. 429-30) were consistent with the mental limitations in the ALJ's RFC finding (R. 18) – i.e., slight restriction in interacting appropriately with the public; moderate restriction in interacting with supervisors and coworkers; and slight restriction in responding appropriately to changes in a routine work setting.

## C. The ALJ properly evaluated Plaintiff's subjective complaints

Plaintiff also argues that the ALJ failed to properly consider Plaintiff's pain and subjective complaints. If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[27] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[28] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[29] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[30] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a

---

[27] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[28] Foote at 1562-1563.

[29] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[30] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

specific credibility finding."[31] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[32]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[33] assessment to Plaintiff's subjective complaints by noting the Plaintiff's right arm amputation, post-traumatic stress disorder and adjustment disorder.  While the ALJ did not cite the exact language of the standard, he did state that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. Sections 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (R. 18.)  This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. §§ 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[34]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition – right arm amputation, post-traumatic stress disorder and adjustment disorder – that could be expected to give rise to pain.  Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's statements concerning the "intensity, duration and limiting effects of these symptoms are not entirely credible"

---

[31] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[32] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[33] Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). .

[34] See Wilson, 284 F.3d at 1226.

15

(R. 20) and that Plaintiff's subjective complaints were not "fully credible considering the claimant's own description of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work." (R. 21.)

While the ALJ noted that Plaintiff should have "some pain and/or limitations as a result of the effects of right arm amputation" the ALJ found that the objective medical evidence does not support a finding of debilitating pain that would preclude all work activity. Plaintiff takes issue with this finding. She points to a March 1, 2004 note in which a doctor at Shands stated that Plaintiff "is still temporarily disabled until she receives her prosthesis and becomes efficient in its use" (R. 235.) Presumably, Plaintiff is attempting to argue, that based on that March 1, 2004 note, she must be disabled because she has never been able to use a prosthesis. However, this note was written only three months after the amputation and more than one year before Plaintiff's alleged onset date. Moreover, an ALJ is not bound by a treating physician's statement that Plaintiff is "disabled" or "unable to work" because this is a legal conclusion and the ultimate issue to be decided by the Commissioner.[35] Even assuming that Plaintiff has not been able to use a prosthesis, the VE testified that someone with Plaintiff's

---

[35] See 20 C.F.R. §§404.1527(e)(1), 416.927(e)(1).

16

limitations, including having only one arm, could perform Plaintiff's past work as a cashier. (R. 488-90.)[36]

Plaintiff also argues that the ALJ erred in finding her subjective complaints about disabling mental limitations less than entirely credible. While finding that Plaintiff had severe mental impairments (R. 16), the ALJ concluded that there was no medical evidence that demonstrated more than mild to moderate limitations. (R.20.) Specifically, the ALJ noted that Plaintiff had never "experienced any medically documented difficulties with activities of daily living, social functioning, concentration and task persistence, and adaptation to work or work-like situations."

As an initial matter, it should be noted that Plaintiff never was treated by a psychologist or psychiatrist and she never was prescribed any medication for her mental impairments. Accordingly, the ALJ relied heavily upon the opinions of the two consultative psychological doctors – Dr. Bojarski and Dr. Poetter – and the two state agency psychological consultants. [37]

Dr. Bojarski found that Plaintiff's ability to understand, remember and carry out instructions was not affected by her impairments but that she had slight limitations in her ability to interact appropriately with the public and respond appropriately to changes in a

---

[36] Plaintiff argues that the ALJ improperly engaged in "sit and squirm jurisprudence." The ALJ gave "some slight weight" to Plaintiff's "apparent lack of discomfort during the hearing." While the ALJ cannot reject objective medical evidence and the claimant's testimony solely upon his observations during the hearing, the ALJ may consider a claimant's demeanor among other criteria in making credibility determinations. Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985.) Here, the ALJ did not rely solely upon Plaintiff's demeanor and appearance during the hearing to determine that she was less than entirely credible. Indeed, as discussed below, the ALJ relied upon objective medical evidence in discrediting Plaintiff's subjective complaints.

[37] In his RFC analysis, the ALJ found that Plaintiff had a slight to moderate restriction in interacting with the public, a moderate restriction in interacting with supervisors and co-workers, and a slight restriction in responding appropriately to changes in a routine work setting. (R. 18.)

17

routine work setting and moderate limitations in her ability to interact appropriately with supervisors and co-workers and respond appropriately to work pressures in a usual work setting. Likewise, Dr. Poetter noted that Plaintiff's mental status examination was inconsistent with a major affective or thought disturbance and he found no indications of severe deficits in memory or concentration. Dr. Zelenka, a state agency psychological consultant reviewed Plaintiff's medical records and found that Plaintiff's affective and anxiety-related disorders were not severe and resulted in only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. The other state agency psychological consultant, Dr. Williams, concluded that Plainitff had insignificant limitations in her ability to understand and remember, and insignificant to moderate limitations in her ability to concentrate, interact socially and adapt to various situations.

Nevertheless, Plaintiff argues that the ALJ erred because he failed to properly acknowledge the records from Mercy Oibo, a licensed mental health counselor. Plaintiff attended at least 68 therapy sessions with Ms. Oibo over the course of approximately three years.

As a licensed mental health counselor, Ms. Oibo is not included in the list of "acceptable medical source[s]" for Social Security disability determinations.[38] Instead, she is an "other source." This distinction is significant because only acceptable medical sources can establish the existence of a medically determinable impairment, can give medical opinions, and can be considered a treating source, whose opinion may be

---

[38] See 20 C.F.R. §§404.1513(a).

18

entitled to controlling weight.[39] While a therapist can provide insight into the severity of a claimant's impairments and how the impairments affect her ability to function, the Commissioner is not required to accept a conclusion from a non-acceptable medical source and may accord such weight as he deems appropriate based upon the medical evidence of record. [40]

The ALJ considered and discussed in his decision Ms. Oibo's treatment records. He also considered her opinion that Plaintiff had poor ability to maintain attention and concentration for extended periods, complete a normal workday or workweek, perform at a consistent pace, maintain socially appropriate behavior and travel in unfamiliar places or use public transportation was poor. However, the ALJ accorded Ms. Oibo's opinion "little weight" because Ms. Oibo was not a mental health doctor and her opinion was not supported by the record medical evidence. (R. 21.) As discussed above, because Ms. Oibo is not an acceptable medical source, the ALJ was not required to accept her opinions. Moreover, Ms. Oibo's opinions were not consistent with the other four doctors who evaluated Plaintiffs' mental condition – Dr. Poetter, Dr. Bojarski, Dr. Zelenka, and Dr. Williams. As such, substantial evidence supports the ALJ's decision to accord little weight to Ms. Oibo's opinions.

Accordingly, for these reasons, the Court concludes that there is substantial evidence to support the ALJ's decision to discredit Plaintiff's subjective complaints.[41]

---

[39] See SSR 06-03p.

[40] See id.

[41] Plaintiff raises two additional arguments in bullet points at the end of her memorandum, neither of which have merit. First, Plaintiff argues that the ALJ "directed that the Plaintiff consider the possibility of
(continued...)

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 28, 2009.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:

All Counsel

---

[41](...continued)
amending her alleged date of disability onset. . . [but] did not similarly suggest the consideration of a 'closed period of disability.'" Plaintiff and her counsel voluntarily amended the disability onset date to August 11, 2005. (R. 468-69. Moreover, while he could have suggested a closed period, the Court is unaware of any affirmative obligation on the part of the ALJ to do so.
    Second, Plaintiff argues that the ALJ's reference to a "lack of significant treatment" is "disheartening in view of the plaintiff's limited financial resources and lack of health insurance coverage." Doc. 18, pages 16-17. Plaintiff contends that a claimant's alleged failure to undertake treatment does not bar receipt of disability benefits if the claimant has a justifiable excuse and that the ALJ failed to develop the record concerning the possibility of a justifiable excuse. However, while the ALJ noted the lack of significant treatment that was not the basis for his decision; rather, the ALJ focused on the objective medical evidence to conclude that Plaintiff was not disabled.